UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 7:18-CV-346 |
| § | |
| SERGIO RAY RAMIREZ, § | |
| § | |
| Defendant. § | |

## **OPINION & ORDER**

The Court now considers the "Motion for Summary Judgment and Supporting Brief"[1] filed by Joe Hand Promotions, Inc. ("Plaintiff") against Sergio Ray Ramirez d/b/a Equis, d/b/a Equis Sports Bar, and d/b/a X Sports Bar ("Defendant"). Defendant has not responded and the time for doing so has passed. After duly considering the record and relevant authorities, the Court **GRANTS** the motion.

### I. BACKGROUND

Plaintiff brings this suit under the Federal Communications Act of 1934[2] ("Communications Act") against Defendant for the November 21, 2015 broadcast of *Miguel Cotto vs. Canelo Alvarez* ("Boxing Program") at Defendant's establishment known as Equis/Equis Sports Bar/X Sports Bar ("Establishment").[3] Plaintiff alleges it held the exclusive right to broadcast the Boxing Program on November 21, 2015.[4] Plaintiff alleges Defendant

---

[1] Dkt. No. 13.
[2] *See* 47 U.S.C. §§ 553, 605.
[3] Dkt. No. 1. Specifically, the Establishment is located at 217 Ruben Vela & Gilberto Perez Ave., Mercedes, Texas 78570. *Id.* at p. 2, ¶ 2(f); *See* Dkt. No. 13-1 (the Establishment's Texas sales and alcohol licenses).
[4] Dkt. No. 1 p. 1.

broadcast the Boxing Program at the Establishment on the respective date without paying sublicense fees to Plaintiff in violation of the Communications Act.[5]

Plaintiff filed its complaint on November 8, 2018, pleading in the alternative under both 47 U.S.C. § 553 and § 605.[6] Plaintiff served Defendant on December 14, 2018,[7] but Defendant has not filed an answer or other responsive pleading. Although Plaintiff and Defendant at one point "engaged in meaningful settlement discussions," prompting the Court to continue the parties' initial pretrial and scheduling conference twice, the Court ultimately issued a scheduling order on May 9, 2019, according to Plaintiff's joint discovery/case management plan.[8]

On June 13, 2019, Plaintiff served Defendant with its Requests for Admissions.[9] According to Plaintiff, Defendant "has failed and/or refused to respond to such requests." In turn, as noted by Plaintiff, Plaintiff's requests for admission served on Defendant are deemed admitted as a matter of law.[10]

Plaintiff timely filed its motion for summary judgment on October 24, 2019, moving "solely under 47 U.S.C. § 605" and seeking $60,00.00 in statutory damages under only § 605,[11] along with attorney's fees and costs. Defendant has not responded to the motion, rendering the motion unopposed by operation of the Local Rules.[12]

## II. LEGAL STANDARD

### a. Summary Judgment

Under Federal Rule of Civil Procedure ("Rule") 56, summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[5] *Id.* at p. 3.
[6] Dkt. No. 1.
[7] Dkt. No. 5.
[8] Dkt. Nos. 6–11.
[9] Dkt. No. 13 p. 3, ¶ 6; Dkt. No. 13-6.
[10] Fed. R. Civ. P. 36(b).
[11] Dkt. No. 13.
[12] L.R. 7.2–7.4 of the United States District Court of the Southern District of Texas.

matter of law."[13] "A fact is 'material' if its resolution could affect the outcome of the action,"[14] while a "genuine" dispute is present "only if a reasonable jury could return a verdict for the non-movant."[15] As a result, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[16] "Although this is an exacting standard, summary judgment is appropriate where the only issue before the court is a pure question of law."[17]

The movant bears the initial burden of showing the absence of a genuine issue of material fact,[18] but is freed from this initial burden on matters for which the non-movant would bear the burden of proof at trial; in that event, the movant's burden is reduced to merely pointing to the absence of evidence.[19] If the movant meets its initial burden, the non-movant must then demonstrate the existence of a genuine issue of material fact.[20] This demonstration must specifically indicate facts and their significance,[21] and cannot consist solely of "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation."[22]

### b. 47 U.S.C. § 605

Title 47 U.S.C. § 605 provides in relevant part:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person

---

[13] Fed. R. Civ. P. 56(a).
[14] *Burrell v. Dr. Pepper/Seven UP Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007) (internal quotation marks and citation omitted).
[15] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006) (citation omitted).
[16] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[17] *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991).
[18] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[19] *See id.* at 323–25; *see also Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995).
[20] *See Celotex Corp.*, 477 U.S. at 323.
[21] *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).
[22] *U.S. ex rel. Farmer v. City of Hous.*, 523 F.3d 333, 337 (5th Cir. 2008) (citing *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)).

not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. . . .[23]

Section 605 applies to the receipt of communications through the air via radio, such as satellite communications.[24] Section 605 is intended to provide for criminal and civil penalties and remedies to "protect the revenue of television cable companies from unauthorized reception of their transmissions."[25]

To recover for a violation under § 605 of the Communications Act, a plaintiff must prove that a defendant, without authorization, intercepted or otherwise unlawfully appropriated a radio communication and published it to any person.[26] Section 605 is also a "strict liability statute."[27] To establish liability, Plaintiff must show (1) the Boxing Program was exhibited in the Establishment and (2) Plaintiff did not authorize the exhibition of the Boxing Program.[28]

### III. DISCUSSION

#### a. Summary Judgment Evidence

Plaintiff provides summary judgment evidence in the following forms: (1) an affidavit signed by Jo Ann Joseph, Director of the Licensing Division, for the Texas Alcoholic Beverage Commission, along with the Establishment's Texas Alcoholic Beverage Commission license and the Establishment's Texas Limited Sales, Excise and Use Tax Permit;[29] an affidavit of Joe Hand,

---

[23] 47 U.S.C.A. § 605 (West).
[24] *See* Dkt. No. 1; *J&J Sports Prods., Inc. v. Mandell Fam. Ventures, L.L.C.*, 751 F.3d 346, 350–53 (5th Cir. 2014) (distinguishing § 605 from § 553).
[25] *Prostar v. Massachi*, 239 F.3d 669, 673 (5th Cir. 2001) (quotations omitted).
[26] *See* 47 U.S.C. § 605; *Mandell Family*, 751 F.3d at 352–53.
[27] *Joe Hand Promotions, Inc. v. SNP Hookah Lounge and Grill LLC*, No. 4:18-cv-01666, 2019 WL 3500854 (quoting *Innovative Sports Mgmt., Inc. v. Martinez*, No. 4:15-cv-01460, 2017 WL 6508184, at *3 (S.D. Tex. Dec. 19, 2017)).
[28] *Id.*
[29] Dkt. No. 13-1.

Jr.;[30] a copy of Plaintiff's "Closed Circuit Television Distribution Agreement" with ROC Nation Sports – ROC Nation Boxing, LLC and Miguel Cotto Promotions, LLC;[31] Plaintiff's Rate Card for the Boxing Program;[32] an affidavit from Berta Muniz ("Auditor") along with photographs of the event at the Establishment;[33] Plaintiff's First Set of Requests for Admission to Defendant, Sergio Ray Ramirez, d/b/a Equis, d/b/a Equis Sports Bar, and d/b/a X Sports Bar;[34] an affidavit for attorney's fees and costs from Jamie King, Plaintiff's counsel;[35] and a process server invoice.[36]

The Court finds Plaintiff provides competent summary judgment evidence. The affidavits are made on personal knowledge, set out facts that would be admissible evidence, and therein show the affiants competent to testify on the matters stated.[37] Defendant has not objected to the presented evidence.

Further, pursuant to Federal Rule of Civil Procedure 36(a)(3), "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Here, Defendant has not responded, objected, or asserted any privileges to Plaintiff's requests for admission. Thus, the requests are deemed admitted. The Court now turns to its analysis.

---

[30] Dkt. No. 13-2.
[31] Dkt. No. 13-3.
[32] Dkt. No. 13-4.
[33] Dkt. No. 13-5.
[34] Dkt. No. 13-6.
[35] Dkt. No. 13-7.
[36] Dkt. No. 13-8.
[37] *See* Fed. R. Civ. P. 56(c)(4).

### b. Liability

Defendant's nonresponse renders Defendant unopposed. Nonetheless, lack of opposition by itself does not warrant summary judgment. The only remaining question regarding liability is whether Plaintiff carries its initial burden.[38] If so, Plaintiff prevails.

Plaintiff argues there is no genuine dispute as to any material fact that Defendant violated 47 U.S.C. § 605. Specifically, Plaintiff argues "on the date of the Program, without Plaintiff's authorization, the transmission of the Program was intercepted and/or received and broadcasted to the patrons of Defendant's Establishment."[39] In turn, Plaintiff argues Defendant "is vicariously liable because he had the right and ability to supervise the infringing activity and a strong financial interest in such activities."[40]

The record does not reveal any material fact issues for Plaintiff's claim. Plaintiff presents evidence indicating Defendant displayed the Boxing Program on the date in question, November 21, 2015. As noted above, Defendant has also deemed admitted Plaintiff's requests. Thus, in short, Defendant admits to (1) being the principal, owner, and manager of the Establishment on the date of the Boxing Program; (2) being the holder of the relevant permit/license from the Texas Alcoholic Beverage Commission and the Texas Limited Sales, Excise, and Use Tax Permit for the Establishment on the date of the Boxing Program; (3) conducting business as the Establishment, as Equis, Equis Sports Bar, and X Sports Bar, at 217 Ruben Vela & Gilberto Perez Ave., Mercedes, Texas on the date of the Boxing Program; (4) having the right and ability to supervise the Establishment's activities on the date of the Boxing Program; (5) having a financial interest and receiving a direct financial benefit from the Establishment's activities on

---

[38] *See J&J Sports Prods., Inc. v. JD Alexander Investments, LLC*, No. 7:17-CV-00064, 2018 WL 2323291, at *2 (S.D. Tex. Jan. 4, 2018).
[39] Dkt. No. 13 p. 12, ¶ 21.
[40] *Id.* at p. 13, ¶ 23.

the date of the Boxing Program; (6) being present and witness to the broadcast of the Boxing Program at the Establishment on the date at issue; (7) not having an agreement with Plaintiff to broadcast the Boxing Program at the Establishment; (8) knowing the Establishment did not obtain from Plaintiff the commercial exhibition rights to the Boxing Program; (9) knowing the broadcast of the Boxing Program at the Establishment was unauthorized by Plaintiff; and (10) knowingly and willfully broadcasting the Boxing Program at the Establishment.[41]

Plaintiff's evidence also establishes that Plaintiff is in the business of distributing and licensing premier sporting events to commercial locations, and Plaintiff alone possessed the exclusive rights to distribute and license the Boxing Program on November 21, 2015.[42] In order to safeguard against unauthorized receipt of the Boxing Program, Plaintiff attests the interstate satellite transmissions were electronically coded and neither available nor intended for public use on the dates at issue.[43] Thus, in Texas, only commercial establishments authorized by Plaintiff via contract could legally exhibit the Boxing Program.[44]

Plaintiff shows Defendant was licensed to conduct business at the Establishment on the date of the Boxing Program, November 21, 2015; conducted said business at the Establishment on November 21, 2015; and did not contract with Plaintiff to exhibit the Boxing Program.[45] Plaintiff also hired an eyewitness, Auditor, who provided an affidavit attesting that on November 21, 2015, the Establishment displayed a boxing event on seven televisions for an audience of

---

[41] Dkt. No. 13-6.
[42] Dkt. No. 13; Dkt. No. 13-2 p. 2, ¶ 4 (Affidavit of Joe Hand, Jr., Plaintiff's president); Dkt. No. 13-3 (Distributorship Agreement).
[43] Dkt. No. 13-2 p. 5, ¶ 12.
[44] Dkt. No. 13.
[45] *See* Dkt. No. 13; Dkt. No. 13-1 (affidavit of Jo Ann Joseph, Director of the Licensing Division for the Texas Alcoholic Beverage Commission and records indicating Sergio Ray Ramirez was licensed to operate the Establishment and sell alcohol at the Establishment on the date at issue). Importantly, Defendant does not contest conducting business on November 21, 2015.

approximately 127 persons inside the Establishment.[46] The Auditor confirmed the boxing event showing at the Establishment was the Boxing Program, where the Auditor stated she witnessed "the introduction of the fight about to begin between Saul Alvarez who wore purple shorts, and Miguel Cotto who wore pink shorts . . . "[47] The Auditor included photos of the displayed Boxing Program and the Establishment's outdoor sign that read, "X BAR COTTO VS ANELO [sic]." Thus, Plaintiff has shown that there is no genuine issue of material fact that Defendant, without the authorization of Plaintiff, intercepted, divulged, or published the Boxing Program, an intercepted communication, for Defendant's own benefit or for the benefit of another not entitled thereto.

Finally, Plaintiff provides evidence Defendant could not have "mistakenly, innocently, or accidentally intercepted" the Boxing Program because the Boxing Program interstate satellite transmissions were "scrambled."[48] Thus, to broadcast the Boxing Program, Defendant must have done some wrongful action, such as using an unauthorized decoder or illegally altering a cable or satellite service.[49] Plaintiff has established that there is no genuine issue of material fact that Defendant, without authorization, intercepted or otherwise unlawfully appropriated the Boxing Program and published it to the patrons at the Establishment sufficient to establish a violation of the Communications Act.[50]

Accordingly, all the elements of a claim under 47 U.S.C. § 605 are met. Plaintiff has established liability by showing (1) the Boxing Program was exhibited at the Establishment on November 21, 2015; and (2) Plaintiff did not authorize the exhibition of the Boxing Program. Plaintiff has carried its initial summary judgment burden.

---

[46] Dkt. No. 13-5 (notarized affidavit of Auditor Berta Muniz).
[47] *Id.* at p. 1.
[48] Dkt. No. 13-2 p. 4, ¶¶ 10–11.
[49] *Id.*
[50] *See* 47 U.S.C. § 605; *Mandell Family*, 751 F.3d at 352–53.

Therefore, the Court finds Plaintiff entitled to summary judgment and Defendant liable under § 605 as a matter of law. The Court now determines the relief to which Plaintiff is entitled.

### c. Requested Relief

Plaintiff seeks statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) in the amount of $10,000.00,[51] and additional damages for Defendant's willful violation in the amount of $50,000.00.[52] Plaintiff also requests attorney's fees in the amount of $2,925.00 and costs in the amount of $550.00.[53] Defendant does not challenge these requested amounts.

Plaintiff argues the unauthorized broadcast of the Boxing Program deprived Plaintiff of the Boxing Program's derived "value, benefits and profits."[54] Plaintiff further argues it has been deprived of the "value of business investment, business opportunities, reputation, and goodwill," and continues to suffers ongoing losses resulting in incalculable damages.[55] Finally, Plaintiff argues Defendant willfully violated § 605 based on Defendant's admissions and thus additional damages would deter future similar violations.[56]

Section 605(e) provides for damages "in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . ."[57] Under the statute, a private party, such as Plaintiff, may recover either its actual damages or statutory damages, as well as full costs and reasonable

---

[51] Dkt. No. 13 p. 14, ¶¶ 27; *see* 47 U.S.C. § 605(e)(3)(C)(i)(II).
[52] Dkt. No. 13 p. 19, ¶ 41.
[53] *Id.* at p. 20; Dkt. No. 13-7 (Affidavit of Jamie King of Jamie King, P.C., Plaintiff's retained counsel, detailing attorney's fee amounts and calculations).
[54] Dkt. No. 13 p. 14, ¶ 28.
[55] *Id.* at pp. 14–16.
[56] *Id.* at p. 19, ¶ 41.
[57] 47 U.S.C. § 605(e)(3)(C)(i)(II); *Joe Hand Promotions, Inc. v. Chios, Inc.*, 544 F. App'x 444, 445 (5th Cir. 2013) (affirming an award of statutory damages and attorney's fees for a violation of § 605).

attorney's fees.[58] Additionally, if the court finds Defendant acted willfully and for the purpose of private financial gain, the court may increase the damages by no more than $100,000.[59]

Here, the Court finds statutory damages in the amount of $7,000.00 appropriate. Plaintiff produces evidence that it would have charged an establishment with the capacity for 100-200 persons, such as Defendant's Establishment, $4,200.00 to legally broadcast the Boxing Program.[60] In addition, Plaintiff indicates Defendant displayed the Boxing Program to approximately 127 individuals and specifically advertised the Boxing Program outside the Establishment to an unknown amount of people.[61] Thus, while the Court finds the circumstances do not warrant the entire statutorily authorized amount, the Court finds an additional $2,800.00 is reasonable for statutory damages to deter future violations.[62] Thus, the Court **GRANTS** Plaintiff $7,000.00 in statutory damages.

The Court also finds the circumstances warrant additional damages because Defendant acted willfully and for the purposes of private financial gain in receiving the unauthorized satellite signal and broadcasting the Boxing Program. The Court finds appropriate awarding additional statutory damages equivalent to double the statutory damages.[63] Therefore, the Court **GRANTS** Plaintiff $14,000.00 in additional statutory damages.

---

[58] *See* 47 U.S.C. § 605(e)(3); *J&J Sports Prods. v. 3705 Iberville LLC*, No. 17-4316, 2018 U.S. Dist. LEXIS 179201, at *9 (E.D. La. Oct. 18, 2018).

[59] 47 § 605(e)(3)(C)(ii).

[60] Dkt. No. 13 p. 10, ¶ 16(h); Dkt. No. 13-2 p. 3, ¶¶ 8–9 (Affidavit of Joe Hand, stating the commercial sublicense fee for the Boxing Program would have been $4,200.00); Dkt. No. 13-4 (Rate Card for the Boxing Program); Dkt. No. 13-5 (Auditor's affidavit counting 127 persons inside the Establishment during the broadcast of the Program on the date at issue).

[61] Dkt. No. 13-5 (Auditor's affidavit explaining her observations and attaching photos).

[62] *See e.g., Joe Hand Promotions, Inc. v. Izalco, Inc.*, No. H-16-3696, 2018 U.S. Dist. LEXIS 1428, at *6 (S.D. Tex. Jan. 4, 2018) (awarding $3,800.00 to deter future violations of § 605); *J&J Sports Prods. v. Little Napoli, Inc.*, No. H-13-1237, 2014 U.S. Dist. LEXIS 99032, at *8 (S.D. Tex. July 22, 2014) (same).

[63] *See Joe Hand Promotions, Inc. v. Chios, Inc.*, No. 4:11-CV-2411, 2012 U.S. Dist. LEXIS 104979, 2012 WL 3069935, at *5 (S.D. Tex. July 27, 2012) ("Generally, it is reasonable to increase an actual or statutory damages award by a multiplier to penalize defendants for willful acts."), aff'd, 544 F. App'x 444 (5th Cir. 2013) (per curiam).

Finally, due to Defendant's liability under § 605, Defendant must also compensate Plaintiff for reasonable attorney's fees and costs.[64] Plaintiff seeks attorney's fees in the amount of $2,925.00 for 11.70 hours of work on this case at $250.00 per hour, and costs in the amount of $550.00, accounting for filing fees and costs to execute service of process.[65] The Court finds these requests reasonable.

In this District, an hourly rate of $250.00 is reasonable,[66] and in turn, Plaintiff's attorney's hours worked and the costs provided are reasonable. Such amount is also consistent with a Lodestar fee calculation.[67] Additionally, although Plaintiff does not specifically request such, Plaintiff's attorney requests in her affidavit conditional attorney's fees "in the event of the need for post-trial and appellate services."[68] The Court also finds this request reasonable.

Therefore, the Court **AWARDS** Plaintiff $2,925.00 in attorney's fees and $550.00 in costs for a total of $3,475.00, and conditional fees as follows: $2,500.00 for the collection of judgment in the event Plaintiff obtains a writ of execution, writ of garnishment, writ of attachment, or other process; $5,000.00 in the event Defendant files a post-judgment motion or pre-appeal motion upon which Plaintiff prevails; and $15,000.00 in the event Defendant files an appeal to the Fifth Circuit Court of Appeals upon which Plaintiff prevails.[69]

---

[64] *Id.* § 605(e)(3)(B)(iii).
[65] Dkt. No. 13-7 (Affidavit of Jamie King).
[66] *See* State Bar of Texas 2015 Hourly Rate Fact Sheet, 12 (2016) https://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends&Template=/CM/ContentDisplay.cfm&ContentID=34182 (providing $258 as the median hourly fee for a lawyer with 11-15 years of experience in 2015, and basing years of experience on year first licensed in any jurisdiction). Plaintiff's counsel, Jamie King, represents she has at least 15 years of experience. Thus, Plaintiff's requested attorney's fees are reasonable.
[67] *JD Alexander Investments, LLC*, 2018 WL 2323291, at *4 (where this Court multiplied plaintiff's counsel's eight hours reasonably expended on the litigation by a $250.00 hourly billing rate resulting in a Lodestar figure of $2,000.00); *SNP Hookah Lounge & Grill LLC*, 2019 WL 3500854, at *4 (S.D. Tex. July 31, 2019) (granting plaintiff's counsel $4,150.00 in attorney's fees for 16.6 hours worked at an hourly rate of $250.00).
[68] Dkt. No. 13-7 p. 4, ¶ 7.
[69] *Id.*

In sum, the Court finds Plaintiff entitled to the relief requested, totaling **$24,475.00** in statutory damages, attorney's fees, and costs. Plaintiff's attorney is also entitled to conditional fees, outlined above, as necessary.

## IV. HOLDING

The Court **GRANTS** Plaintiff's motion for summary judgment[70] against Sergio Ray Ramirez d/b/a Equis, d/b/a Equis Sports Bar, and d/b/a X Sports Bar. The Court **GRANTS** Plaintiff a total **$24,475.00** in statutory damages, attorney's fees, and costs. Specifically, Plaintiff is entitled to **$7,000.00** in statutory damages; **$14,000.00** in additional statutory damages for Defendants' willful violation; and **$3,475.00** in attorney's fees and costs. As necessary, Plaintiff is entitled to conditional fees consistent with this Order. Because no other claims or causes of action exist, a final judgment will issue separately pursuant to Rule 58.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 3rd day of January, 2020.

_____
Micaela Alvarez
United States District Judge

---

[70] Dkt. No. 13.